**In re ASSET RECOVERY GROUP, INC., Debtor.**

**Amerisource Funding, Inc. and Asset Recovery Group, Inc., Plaintiffs,**

**v.**

**Dore & Associates Contracting, Inc., Defendant.**

**Bankruptcy No. 00–23047–MBM.**
**Adversary No. 00–2199–MBM.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 7, 2001.

---

**6.** In light of the Court's disposition of the Motion, status hearings on both adversary matters will be scheduled.

Patricia Blais, Gates & Associates, P.C., Warrendale, PA.

Stephen J. Laidhold, Sable Pusateri Rosen Gordon & Adams, Pittsburgh, PA.

Anthony P. Picadio, Picadio McCall Miller & Norton, Pittsburgh, PA.

### MEMORANDUM AND ORDER
### OF COURT

M. BRUCE McCULLOUGH,
Bankruptcy Judge.

**AND NOW,** this **7th day** of **March, 2001,** upon consideration of (a) the complaint of Amerisource Funding, Inc. (hereafter "Amerisource"), one of the instant plaintiffs, and Asset Recovery Group, Inc. (hereafter "ARGI" or "the instant debtor"), the above-captioned debtor and the other instant plaintiff, which complaint (i) was originally filed in the Pennsylvania Court of Common Pleas, Allegheny County, and then subsequently removed to this Court, and (ii) as filed commenced an action by Amerisource and ARGI against Dore & Associates Contracting, Inc. (hereafter "Dore"), the instant defendant, for Dore's failure to pay to Amerisource an amount alleged to have been due Amerisource for work performed by ARGI on a contract between Dore and ARGI, which contractual right to performance by Dore was assigned from ARGI to Amerisource prepetition, (b) Amerisource's motion for summary judgment in the removed action as just described, (c) Dore's answer and response to Amerisource's summary judgment motion, and (d) the other submissions relevant to the instant matter; and subsequent to notice and a hearing on the matter held on February 7, 2001, it is hereby **ORDERED, ADJUDGED, AND DECREED** that Amerisource's motion for summary judgment is **DENIED WITH PREJUDICE.** The instant adversary proceeding constitutes a noncore matter; however, because the denial of a summary judgment motion is not a final judgment or order, the Court may enter the instant order denying Amerisource's motion for summary judgment. The rationale for the Court's decision follows.

### I.

The essence of Amerisource's present claim against Dore is that Dore became obligated in early 2000, and remains obligated at the present time, to pay to Amerisource $358,500 plus interest for work that ARGI performed on a contract between ARGI and Dore (hereafter "the Subcontract"), which right to payment for work done by ARGI was obtained by Amerisource via a prepetition assignment from ARGI. Amerisource contends that Dore became obligated to pay the $358,500 amount to Amerisource in early 2000 in the form of two progress payments (hereafter "the Progress Payments"). Dore responds to Amerisource's claim by arguing, *inter alia,* that (a) Dore neither became obligated in early 2000 nor is presently obligated to pay to Amerisource any amount for work done by ARGI pursuant to the Subcontract, and (b) Dore, even assuming *arguendo* that it became so obligated to Amerisource, is free to offset its own damages incurred as a result of alleged breaches by ARGI of the Subcontract against Amerisource's claim, which damages Dore contends are so substantial in amount that their offset as described above serves to extinguish Amerisource's claim. Amerisource, in response to the preceding assertions of Dore, brings the instant summary judgment motion. Amerisource argues that the entry of summary judgment in its favor is warranted at this time because, according to Amerisource, (a) that Dore became obligated to make the Progress Payments to Ameri-

source in early 2000 is not subject to a genuine factual dispute notwithstanding Dore's contrary assertion, (b) Dore is foreclosed, as a matter of law, from offsetting against Amerisource's claim any damages that Dore may have incurred unless such damages were incurred by, and known to, Dore prior to the dates upon which Dore became obligated to make the Progress Payments, (c) none of the damages which Dore alleges that it has incurred were both incurred by, and known to, Dore prior to early 2000 when Dore became obligated to make the Progress Payments, and (d) Amerisource is thus entitled to a judgment in its favor as a matter of law. As explained below, the Court rejects certain of the predicates to Amerisource's position in support of its summary judgment motion, to wit that (a) a genuine factual dispute does not exist regarding Dore's obligation to make the Progress Payments in early 2000, and (b) Dore, presuming *arguendo* that it became obligated to make the Progress Payments in early 2000, may not, as a matter of law, offset against Amerisource's claim Dore's own Subcontract breach damages which were incurred by, and/or which became known to, Dore subsequent to the dates upon which Dore became obligated to make the Progress Payments (hereafter "Dore's Subsequent Subcontract Breach Damages"). As a consequence, the Court is constrained to deny Amerisource's instant summary judgment motion.

## II.

■ Amerisource contends, and quite ardently, that there does not presently exist any dispute that Dore became obligated to make the Progress Payments to Amerisource in early 2000. Because paragraph 8 of the Subcontract appears to condition any obligation by Dore to make a progress payment upon approval by Dore of work completed by ARGI for which said payment is sought, *see* Amerisource

Summ.J.Mot. Ex. 2 (Subcontract ¶ 8), Amerisource necessarily must also contend that Dore approved, and that Dore does not dispute its approval of, ARGI's work that corresponds to the Progress Payments. Unfortunately for Amerisource, the Court understands Dore to presently dispute that Dore ever approved ARGI's work that corresponds to the Progress Payments. Furthermore, the Court finds the dispute raised by Dore regarding the approval of ARGI's work to be a genuine dispute given that (a) the Subcontract appears to be silent as to the process that must be satisfied in order to obtain such approval by Dore, and (b) Amerisource's proof of such approval by Dore presently amounts only to (i) allegations that Dore failed to object to the completeness or quality of ARGI's work in question, which allegations, even if they were found by the Court to be true, do not necessarily evidence that Dore approved ARGI's work in question, and (ii) a January 10, 2000 notation by an Amerisource representative on a document to the effect that Dore was pleased with ARGI's work, *see* Amerisource Summ.J.Mot. Ex. 8, which notation, even presuming it's authenticity, is not of sufficient persuasive value such that the Court can grant summary judgment in Amerisource's favor. Therefore, given that a genuine dispute presently exists as to whether Dore ever approved the work of ARGI that corresponds to the Progress Payments, the Court must also (a) find that a genuine dispute presently exists regarding whether Dore became obligated to make the Progress Payments to Amerisource in early 2000, and (b) accordingly deny Amerisource's instant summary judgment motion.

As an aside, the Court notes that it is cognizant of Amerisource's contention that, pursuant to the Subcontract, Dore was not legally entitled for any reason to withhold

from payment to Amerisource any more than 10% of any amount that Dore became obligated to pay to ARGI via the Subcontract. Unfortunately for Amerisource, the preceding contention, even assuming *arguendo* that it is true, may prove to be irrelevant if the Court ultimately finds that Dore never approved the work of ARGI that corresponds to the Progress Payments given that such approval appears to be a condition of Dore's payment obligation under the Subcontract.

## III.

Amerisource also fervently maintains that Dore, as a matter of law, is foreclosed from offsetting Dore's Subsequent Subcontract Breach Damages against Amerisource's claim. Even assuming *arguendo* that Dore became obligated to make the Progress Payments to Amerisource in early 2000, the Court concludes, as a matter of law, that Dore in the instant matter is not precluded from offsetting, via the doctrine of recoupment, Dore's Subsequent Subcontract Breach Damages against Amerisource's claim. As set forth below, the preceding conclusion by the Court is dictated for several reasons.

### A. Construction of Dore's Third Affirmative Defense contained in Dore's Answer.

■ The Court construes Dore's Third Affirmative Defense contained in Dore's Answer as a claim for recoupment vis-a-vis Amerisource's claim against Dore because (a) "[r]ecoupment allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction," *In re Clowards, Inc.,* 42 B.R. 627, 628

(Bankr.D.Idaho 1984); *In re B & L Oil Co.,* 782 F.2d 155, 157 (10th Cir.1986), and (b) Dore's Third Affirmative Defense sets forth a claim for damages that Dore has incurred as a result of breaches by ARGI of the Subcontract, which claim for damages by Dore necessarily arises out of the same transaction as did Amerisource's claim against Dore, to wit the Subcontract. *See infra* p. 14. Furthermore, that said recoupment claim by Dore is designated by Dore as an affirmative defense rather than a counterclaim does not pose any pleading problem since said recoupment claim is asserted by Dore only as a defensive measure, which conclusion necessarily follows given that Dore, via said recoupment claim, seeks only to defeat Amerisource's claim against Dore rather than to recover affirmative relief from Amerisource. Moreover, even if said recoupment claim *arguendo* should have been formally designated as a counterclaim, "[i]nasmuch as it is not clear whether set-offs and recoupments should be viewed as defenses or counterclaims, the courts, by invoking the misdesignation provision in [Fed.R.Civ.P.] Rule 8(c), should treat matter of this type as if it had been properly designated by defendant, and should not penalize improper labelling." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1275 (West 1990).[1] Therefore, the Court construes Dore's Third Affirmative Defense as a claim for recoupment vis-a-vis Amerisource's claim against Dore.

### B. Reconciliation of case authority cited by Amerisource.

■ The Court is cognizant of, and does not neglect to consider, the veritable

---

1. Fed.R.Civ.P. 8(c) provides, in pertinent part, that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Fed. R.Civ.P. 8(c), 28 U.S.C.A. (West 1992). Fed. R.Civ.P. 8 is made applicable to the instant adversary proceeding by Fed.R.Bankr.P. 7008(a). *See* Fed.R.Bankr.P. 7008(a), 11 U.S.C.A. (West 2000).

litany of case authority provided by Amerisource in support of Amerisource's prefatory position, to wit that Dore cannot utilize Dore's Subsequent Subcontract Breach Damages to justify Dore's failure in early 2000 to make the Progress Payments which were then allegedly due because Dore became aware of said Subcontract breach damages only subsequent to the due date of the Progress Payments. *See* Amerisource Br. filed Jan. 12, 2001, at 25. Indeed, said case authority stands for the proposition that a party to a construction contract who is liable for a progress payment generally can properly withhold such payment on account of its own contract breach damages only if, at the time when such progress payment is due, said party, *inter alia*, is aware of its contract breach damages, and such withholding is called for expressly in said contract. *See, e.g., United States, for the Use and Benefit of D'Agostino Excavators, Inc. v. Heyward–Robinson Co.*, 430 F.2d 1077, 1085–1086 (2nd Cir.1970); *General Insurance Co. of America v. K. Capolino Construction Corp.*, 983 F.Supp. 403, 424 (S.D.N.Y. 1997). Furthermore, the Court does not disagree with either Amerisource or the case authority which Amerisource cites regarding the proposition that (a) an unjustified withholding of progress payments by one party to a contract is a breach of such contract sufficiently substantial so as to justify the termination of said contract by the other party thereto, and (b) the party harmed by the improper withholding of progress payments is entitled to (i) damages or restitution equal to compensation for the work that said party performs up to the point of contract termination provided that such termination occurs, or (ii) compensation provided by said contract plus delay damages in the event that said contract is not terminated. Therefore, and consistent with the preceding, and assuming *arguendo* that it became obligated to

make the Progress Payments to Amerisource in early 2000, Dore (a) breached the Subcontract by failing to make the Progress Payments to Amerisource in early 2000, and (b) cannot utilize Dore's Subsequent Subcontract Breach Damages to justify its failure to then make the Progress Payments.

■ Unfortunately for Amerisource, however, none of the aforesaid case authority to which it cites holds, or can even be construed as remotely standing for the proposition, that a party breaching a contract by improperly withholding progress payments is precluded from offsetting against another's claim, via the doctrine of recoupment or otherwise, contract breach damages or costs of completion that are incurred by, and/or which become known to, said party subsequent to said party's own breach. In fact, in at least several of the cases cited by Amerisource—most notable of which are *Heyward–Robinson* and *Capolino Construction*—the party breaching a contract by improperly withholding progress payments was permitted to offset against another's claim, via recoupment or otherwise, contract breach damages or costs of completion that were incurred by, and/or which became known to, said party only after said party's own breach. *See Heyward–Robinson*, 430 F.2d at 1079–1080 (breaching contractor only required to pay subcontractor a net amount, thus necessarily implying offset); *Capolino Construction*, 983 F.Supp. at 428–429, 431 & 437 (most notably, the harmed party (i.e., Capolino) was required to pay, rather than to receive, an amount on the Winbrook contract because the breaching party was entitled to offset its damages and costs to complete said contract). The Court is also aware of case authority in at least one other state directly supporting the proposition that a party breaching a contract by improperly withholding prog-

ress payments may offset, and in particular may recoup, against another's claim any contract breach damages that were incurred by, and/or which became known to, said party subsequent to said party's own breach. *See Sasser & Co. v. Griffin,* 133 Ga.App. 83, 210 S.E.2d 34, 39 (1974) ("Late performance may constitute a breach of contract by the plaintiff, but the remedy for the breach is not nonpayment; it is recoupment"); *Uniflex Corp. v. Saxon,* 198 Ga.App. 445, 402 S.E.2d 67, 68 (1991) (same). Furthermore, various general principles of contract law in Pennsylvania support, at least indirectly, an offset, be it via recoupment or otherwise, of damages that are incurred by, and/or which become known to, a party only subsequent to said party's own breach of a contract via an improper withholding of progress payments. *See* 8 P.L.E. *Contracts* § 352 at 387 (West 1971) ("Although substantial performance may entitle a plaintiff to recover, he is not entitled to recover the whole contract price, for the defendant may recoup for defects in the execution of the work; and the plaintiff will be allowed the amount of the contract, deducting therefrom a sufficient sum to fully compensate the defendant for the loss he sustains in the failure of the plaintiff to give strict performance"); 8 P.L.E. *Contracts* § 369 at 424 ("A defective performance is a defense pro tanto, not merely a set-off, to an action on a contract"); 8 P.L.E. *Contracts* § 390 at 461 ("defendant in an action by a contractor on a building contract may, for example, counterclaim for damages for defective or improper work done or materials used, or for delay in construction"); 8 P.L.E. *Contracts* § 370 at Supp. 56 (LEXIS 1998) ("Under the modern view as provided by the Restatement (Second) of Contracts a party who commits a breach is entitled to recover any benefit in excess of the loss that he has caused by his own breach"). Therefore,

and consistent with the aforesaid case authority, and assuming *arguendo* that it breached the Subcontract by failing to make the Progress Payments to Amerisource in early 2000, Dore may offset against Amerisource's claim, via the doctrine of recoupment, Dore's Subsequent Subcontract Breach Damages.

At the February 7, 2001 hearing on Amerisource's summary judgment motion the Court informed Amerisource that the Court understands the *Capolino Construction* and *Heyward–Robinson* decisions to hold, as a matter of law, that a party breaching a contract via the improper withholding of progress payments nevertheless is free to offset, and in particular may recoup, against another's claim any contract breach damages or costs of completion that are incurred by, and/or which become known to, said party subsequent to said party's own breach. Amerisource, in response at said hearing, orally attempted to distinguish said decisions from Amerisource's instant claim against Dore by arguing that, in contrast to the contracts at issue in *Capolino Construction* and *Heyward–Robinson,* the Subcontract did not legally entitle Dore for any reason to withhold from payment to Amerisource any more than 10% of any amount that Dore became obligated to pay to ARGI via the Subcontract. Unfortunately for Amerisource, even if such a distinction as advanced by Amerisource exists between the contracts at issue in *Capolino Construction* and *Heyward–Robinson,* on the one hand, and the Subcontract, on the other hand, such distinction is irrelevant to the issue of whether a party breaching a contract via the improper withholding of progress payments nevertheless is free to offset, or in particular to recoup, against another's claim any contract breach damages or costs of completion that are incurred by, and/or which become known to,

said party subsequent to said party's own breach; such distinction is only relevant to the separate issue of whether a progress payment can be contractually withheld after the corresponding construction work has been approved, which approval otherwise results in an obligation to make the progress payment.[2]

Amerisource also contended orally at the February 7, 2001 hearing, in any event but perhaps in a further effort to distinguish the decisions in *Capolino Construction* and *Heyward–Robinson,* that (a) Amerisource is presently not proceeding against Dore for anything more allegedly due from Dore on the Subcontract other than the Progress Payments, and (b) any of Dore's Subcontract breach damages which were caused by ARGI are properly assertable as an offset by Dore in response to an action by ARGI against Dore rather than in response to Amerisource's present action against Dore. Unfortunately for Amerisource, that Amerisource purports to confine its action against Dore to the Progress Payments does not serve to shield Amerisource's claim from any claim of recoupment by Dore that is grounded on Dore's Subsequent Subcontract Breach Damages. The preceding conclusion follows because (a) any right to payment from Dore that Amerisource presently possesses, which right Amerisource obtained via a prepetition assignment from ARGI, is granted by the Subcontract, (b) Amerisource, by contending that Dore refuses to honor an existing obligation to pay Amerisource, is thus necessarily also contending that Dore is thereby breaching the Subcontract, (c) the Court, consequently, must construe Amerisource's claim against Dore as one for an alleged breach by Dore

of the Subcontract notwithstanding that the alleged extent of Amerisource's damages equal the value of the Progress Payments, and (d) Dore, as explained above, is free, assuming *arguendo* that it breached the Subcontract, to recoup against a claim predicated on said breach any of Dore's Subsequent Subcontract Breach Damages.

### C. The intersection of the law regarding assignments and Dore's claim for recoupment.

█ The Court concludes that Dore's claim for recoupment grounded on Dore's Subsequent Subcontract Breach Damages is not negatively affected by (a) the fact that Amerisource obtained any right that it presently has to payment from Dore via a prepetition assignment from ARGI, and (b) the rule that the right of an assignee, such as is Amerisource, is not subject to any defense or claim of an obligor, such as is Dore, which defense or claim accrues after the obligor receives notification of the assignment, 3 P.L.E. *Assignments* § 73 at 197 (West 1957). The preceding conclusion is warranted by an application of the law that, at least in Pennsylvania, a claim of an obligor, even if said claim matures after notice of an assignment (i.e., no debt is due at the time of the assignment), is nevertheless allowable against an assignee provided that said claim is based on a right of the obligor that is inherent in the contract sued upon by the assignee. *See Northwestern National Bank v. Commonwealth,* 345 Pa. 192, 27 A.2d 20, 25 (1942); *Maryland Cooperative Milk Producers v. Bell,* 206 Md. 168, 110 A.2d 661, 665 (1955) ("It has been held in Pennsylvania that a counterclaim may be allowed

---

2. As mentioned earlier in the instant memorandum and order, the separate issue of whether a progress payment can be contractually withheld after the corresponding construction work has been approved may ultimately prove to be irrelevant in the instant matter if the Court ultimately finds that Dore never approved the work of ARGI that corresponds to the Progress Payments. *See supra* p. 828.

even where it matures after the assignment, if the right was inherent in the outstanding obligation"); 3 P.L.E. *Assignments* § 73 at 198–199 & § 93 at 207 ("the assignee of a construction contract cannot recover against the debtor unless it is shown that the contract has been fully complied with").

The rationale for the preceding law in Pennsylvania is that a claim of an obligor that is based on a right which inheres in a contract is a claim that also accrues prior to the assignment by an obligee of a right to performance by said obligor under said contract notwithstanding that said obligor's claim may be unmatured as of the date of the aforesaid assignment. *See Northwestern National Bank,* 27 A.2d at 25. The Court also notes that a claim of an obligor that is based on a right of said obligor that is inherent in the contract sued upon by the assignee is, by definition, a claim for recoupment by said obligor against said assignee; the allowance in Pennsylvania of such a claim against an assignee regardless of the date upon which said claim matures is consistent with the Restatement (Second) of Contracts. *See* Restatement (Second) of Contracts § 336 cmt. d & illus. 7 (1979) ("Notification [of an assignment], however, does not enlarge the obligor's duty, and the possibility remains that the assigned right will become subject to a defense or to a claim by way of recoupment").

Applying the foregoing, (a) Dore's claim for recoupment against Amerisource, which claim is grounded on damages caused by ARGI's alleged breaches of the Subcontract, is based on a right of Dore that inheres in the Subcontract, to wit the right that Dore has to be free from, as well as to be made whole for, any breaches of the Subcontract, which right inheres in the Subcontract via the common law as well as, *inter alia,* paragraphs 6 and 12 of the Subcontract, and (b) Amerisource's claim against Dore, as the Court has already determined, is a suit upon the Subcontract, namely an action for an alleged breach by Dore of the Subcontract notwithstanding that the alleged extent of Amerisource's damages are confined solely to the value of the Progress Payments. Furthermore, Dore's claim for recoupment, because it is based upon a right which inheres in the Subcontract, is a claim that accrued prior to the assignment of Subcontract rights from ARGI to Amerisource notwithstanding that Dore's recoupment claim may not have matured until subsequent to the date of said assignment. As a consequence of the preceding, if not simply because Dore's claim is one for recoupment, Dore's recoupment claim is allowable against Amerisource notwithstanding the date upon which said claim matured.

**D. *Other issues regarding the allowance of Dore's recoupment claim.***

■ In another matter in the instant bankruptcy case that involves Amerisource, which matter is unrelated to the instant adversary proceeding but in which matter the issue of recoupment has been raised, Amerisource contends, as a matter of law, that the doctrine of recoupment is inapplicable unless the party seeking to recoup has made some sort of an overpayment to either the party against whom recoupment is sought or, if different from said party, the obligee of the party seeking to recoup. *See* Amerisource Br. filed Nov. 30, 2000 (*In re Asset Recovery Group, Inc.,* Motion Nos. 00–5133M & 00–5134M, which motions involve, *inter alia,* Amerisource and L.V. Contracting, Inc.), at 3–5. In support of the preceding position by Amerisource, Amerisource cites to several cases which, upon examination by the Court, appear to be supportive of said position. Unfortunately for Amerisource, the Court is aware of contrary case au-

thority which the Court finds to be much more persuasive than that which is cited to by Amerisource. *See In re Heafitz*, 85 B.R. 274, 279–280 (Bankr.S.D.N.Y.1988) (pointing out that recoupment was permitted in *Clowards*, 42 B.R. 627, despite the lack therein of an advance or overpayment); *Newbery Corp. v. Fireman's Fund Insurance Co.*, 95 F.3d 1392, 1400–1401 (9th Cir.1996) (same). Without elaborating further, the Court finds the recoupment limitation of the existence of an overpayment to make little or no sense, particularly given that, absent permission to recoup, the party seeking such recoupment will generally then be forced to make what is essentially an overpayment to the party against whom recoupment is sought. Accordingly, and because the case authority provided by Amerisource is not binding on the Court, the Court holds, as a matter of law, that a party seeking to recoup may do so regardless of whether said party has made some sort of an overpayment. Consequently, Dore's claim for recoupment against Amerisource is not negatively affected by whether Dore has made some sort of an overpayment to either ARGI or Amerisource.

Amerisource also argues that (a) a party to a contract who prevents the other party thereto from performing its duties under said contract may not take advantage of said other party's failure to perform, (b) Dore's failure to make the Progress Payments when they allegedly became due (i.e., in early 2000) caused ARGI to fail to pay its own subcontractors and vendors, (c) ARGI's failure to pay its own subcontractors and vendors constitutes a breach of the Subcontract, which particular breach by ARGI comprises a portion of the basis for Dore's instant claim for recoupment, and (d) Dore should not be permitted to recoup damages caused by ARGI's aforesaid breach for to allow such recoupment would permit Dore to benefit from a Subcontract breach that Dore essentially caused. The Court takes issue neither with Amerisource's preceding statement of the law in Pennsylvania, to wit that a party to a contract who prevents the other party thereto from performing its duties under said contract may not take advantage of said other party's failure to perform, nor with Amerisource's general application of said law as stated within the construction contract context. Unfortunately for Amerisource, the preceding legal principle does not have any relevance to the instant matter. The preceding conclusion by the Court is dictated because Amerisource, as the factoring agent for ARGI and pursuant to the Purchase and Sale Agreement entered into between Amerisource and ARGI on August 25, 1999, purchased for cash from ARGI in early 2000 the right to subsequently obtain the Progress Payments from Dore. As a consequence of said purchase by Amerisource, ARGI received in early 2000 the cash which is alleged to have then been due in the form of the Progress Payments notwithstanding that ARGI received said cash from Amerisource rather than Dore. ARGI, as a consequence of receiving said sales or factoring proceeds from Amerisource, obtained in early 2000 all that it legally was entitled to receive via the Progress Payments, which means that ARGI cannot point to *the failure to receive the same as the cause* of its breach of the Subcontract vis-a-vis ARGI's failure to pay its own subcontractors and vendors. The fact that Amerisource rather than ARGI was the sole party possessed of an entitlement to receive the Progress Payments in early 2000 also leads the Court to conclude that Dore's failure to make such payments in early 2000, even assuming *arguendo* that Dore had an obligation to then make such payments, could not possibly have caused ARGI to fail to pay its own subcontractors

and vendors. Consequently, Dore's conduct with respect to the Progress Payments should not, and thus does not, prevent Dore from utilizing any damages caused by ARGI's breaches of the Subcontract in a claim for recoupment by Dore vis-a-vis Amerisource's claim against Dore.

### E. *Conclusion regarding Dore's claim for recoupment.*

For all of the foregoing reasons, Dore may offset against Amerisource's claim, via the doctrine of recoupment, Dore's Subsequent Subcontract Breach Damages. Dore, of course, may also offset against Amerisource's claim, via recoupment, any other damages caused by ARGI's breaches of the Subcontract. Because Dore may so offset any damages caused by ARGI's breaches of the Subcontract, and since the Court cannot presently ascertain the extent of any such offset by Dore, a genuine factual dispute thus exists regarding whether, and/or to what extent, Amerisource may recover on its claim against Dore. Therefore, the Court must deny Amerisource's instant summary judgment motion.

### IV.

■ Aside from denying Amerisource's instant summary judgment motion, the Court wishes to make a few additional observations and conclusions in light of the above analysis. First, the Court understands the parties to agree that (a) ARGI never terminated the Subcontract notwithstanding Dore's failure to make the Progress Payments to Amerisource in early 2000, and (b) the construction project that was the subject of the Subcontract has since been completed. Because ARGI never terminated the Subcontract and continued to perform notwithstanding Dore's failure to make the Progress Payments in early 2000, and since the Subcon-

tract no longer can effectively be terminated given that the construction project that was the subject of the Subcontract is now complete, ARGI waived its contractual right of forfeiture (i.e., right to terminate) assuming *arguendo* that Dore breached the Subcontract by not making the Progress Payments in early 2000. *See* 8 P.L.E. *Contracts* § 366 at 416–417. As a consequence of the preceding, and assuming *arguendo* said breach by Dore, Amerisource is entitled at this time, with respect to its claim against Dore, to no more than the face amount of the Progress Payments plus delay damages, which delay damages would appear to be limited to lost interest.

■ Second, and given that Dore can recoup against claims of either Amerisource or ARGI as explained above, if the sum of any damages incurred by Dore as a result of Subcontract breaches by ARGI exceeds the sum of whatever amount is due from Dore to Amerisource and ARGI on the Subcontract, then Amerisource's claim against Dore is necessarily extinguished. As a corollary of the preceding, if such damages incurred by Dore exceed (a) the sum of the face amount of the Progress Payments and any lost interest which Amerisource would be entitled to if Dore breached the Subcontract by not making the Progress Payments in early 2000, plus (b) any amount due from Dore to ARGI on the Subcontract, then it is purely academic as to whether Dore so breached the Subcontract given that the aforesaid sum that would be due to Amerisource in the event of said breach would be extinguished via Dore's aforesaid recoupment. Therefore, and so as to perhaps expedite the resolution of the instant adversary proceeding, the Court suggests to the parties that they immediately endeavor to ascertain whether, indeed, a determination as to whether Dore breached the Subcontract by failing to make the Progress Payments in early 2000 is a purely academic exercise.

Third, the Court notes that Amerisource and ARGI, on the face of their state court complaint, demanded a jury trial with respect to the claim of Amerisource against Dore, which claim now comprises the subject of the instant adversary proceeding. Because such jury trial demand remains effective even though it predates Dore's removal of said claim to the Court, *see* Fed.R.Civ.P. 81(c), 28 U.S.C.A. (West 1992); Fed.R.Bankr.P. 9015(a), 11 U.S.C.A. (West 2000) (making Fed. R.Civ.P. 81(c) applicable to adversary proceedings), and since the Court does not understand either Amerisource or ARGI to have expressly consented at the present time to a jury trial to be conducted by the Court, the Court will not be able to ultimately resolve the instant adversary proceeding unless (a) Amerisource and ARGI expressly consent to a jury trial to be conducted by the Court, *see* 28 U.S.C.A. § 157(e) (West 2000), (b) all of the parties to the instant adversary proceeding consent to the withdrawal of the jury trial demand, *see* Fed.R.Civ.P. 38(d), 28 U.S.C.A. (West 2000), or (c) the instant adversary proceeding can be resolved on a future summary judgment motion. Furthermore, because the instant adversary proceeding is a noncore matter, the Court ultimately will not be able to enter a final order or judgment in any event unless Amerisource and ARGI expressly consent to such entry, *see* 28 U.S.C.A. § 157(c)(2) (West 1993), which express consent the Court does not understand either Amerisource or ARGI to have given thus far.

## V.

**IN SUMMARY,** Amerisource's motion for summary judgment is **DENIED WITH PREJUDICE.**